FILED

2020 Feb-05  PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF ALABAMA
### Southern Division

| | | |
|---|---|---|
| **Paul McAnally, Christopher Todd Clark Jr., and Blaine Simmons, individually and on behalf of similarly situated employees.** | ) ) ) ) ) | |
| **Plaintiffs.** | ) ) | |
| **vs.** | ) ) | **Case No. 2:19-cv-02033-RDP** |
| **Alabama Plumbing Contractor LLC, Brent Vacarella, Vicky Vacarella, Greg Johnson and Josh Martin.** | ) ) ) ) ) | |
| **Defendants.** | ) | |

### Motion to Certify FLSA Claims as Collective Action

COMES NOW, M. Scott Harwell, pursuant to 29 U.S.C. Section 216(b), and moves this Honorable Court to certify the Plaintiffs' FLSA overtime claims against the Defendants as a collective action and would show the Court the following:

1.    The Plaintiffs seek to certify as a collective action as to all non-exempt current and/or former employees of the Defendant that held and/or hold the position of a plumber and/or apprentice.  Excluded from this collective action would be non-exempt employees that worked in the office because said employees are not similarly situated.

2.      The Plaintiffs request this Court to authorize notice "by first class mail to all similarly situated non-exempt current and/or former employees that are plumbers and/or apprentices, including, but not limited to, current and/or former non-exempt employees that were employed by ELCO at any time during the three years prior to the filing of this action to inform them of the nature of the action and their right to opt-into this lawsuit."

3.      The Plaintiffs further request an Order requiring ELCO to produce a computer-readable data file containing the names, current and/or last known contact information, addresses, Social Security number, e-mail addresses and telephone numbers of such potential opt-ins so that notice may  be implemented.

4.      The FLSA authorizes collective actions against employers accused of violating the FLSA. 29 U.S.C. § 216(b). Section 216(b) provides that "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Thus, to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated. See *Anderson v. Cagle's Inc.*, 488 F.3d 945, 952 (11th Cir. 2007). Participants in a § 216(b) collective action must affirmatively opt into the suit. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is

brought."). That is, once a plaintiff files a complaint against an employer, any other similarly situated employees who want to join must affirmatively consent to be a party and file written consent with the court. *Albritton v. Cagle's Inc.*, 508 F.3d 1012, 1017 (11th Cir. 2007).

5.      Because similarly situated employees must affirmatively opt into the litigation, the decision to certify the action, on its own, does not create a class of plaintiffs. Rather, the "existence of a collection action under § 216(b) . . . depend[s] on the active participation of other plaintiffs." *Cameron-Grant v. Maxim Healthcare Servs. Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003). Under § 216(b), the action does not become a 'collective' action unless other plaintiffs affirmatively opt in to the class by giving written and filed consent. The benefits of a collective action "depend on employees receiving accurate and timely notice . . . so that they can make informed decisions about whether to participate." See *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989) (emphasis added). Therefore, the importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).  After being given notice, putative class members have the opportunity to opt-in. The action proceeds throughout discovery as a representative action for those who opt-in. See id.

6.     The key to starting the motors of a collective action is a showing that there is a similarly situated group of employees.  *See Anderson*, 488 F.3d at 953; Hipp, 252 F.3d at 1217.

7.     Without defining "similarly," the 11th Circuit provided some guidance in *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991). There, the appellate court emphasized that before facilitating notice, a "district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Id. at 1567-68. Later, in *Grayson v. K Mart Corp.*, the 11th Circuit instructed that under § 216(b), courts determine whether employees are similarly situated--not whether their positions are identical. 79 F.3d 1086, 1096 (11th Cir. 1996). In other words, the Court explained what the term does not mean--not what it does.

8.     While not requiring a rigid process for determining similarity, the 11th Circuit has sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase. The first step of whether a collective action should be certified is the notice stage. *Anderson*, 488 F.3d at 952-53; Hipp, 252 F.3d at 1218. At this stage, a district court determines whether other similarly situated employees should be notified.

9.    A plaintiff (or plaintiffs as in this case) has the burden of showing a "reasonable basis" for his claim that there are other similarly situated employees. See *Anderson*, 488 F.3d at 952; Grayson, 79 F.3d at 1097; *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983). The 11th Circuit has described the standard for determining similarity, at this initial stage, as "not particularly stringent," *Hipp*, 252 F.3d at 1214, "fairly lenient," id. at 1218, "flexib[le]," id. at 1219, "not heavy," Grayson, 79 F.3d at 1097, and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)," id. at 1096.  (Emphasis added) In 2007, the Court recounted its law and noted that at the initial stage, courts apply a "fairly lenient standard." *Anderson*, 488 F.3d at 953; see *Hipp*, 252 F.3d at 1218. The district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion. Nonetheless, there must be more than "only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores." Haynes, 696 F.2d at 887.

10.    This first step is also referred to as conditional certification since the decision may be reexamined once the case is ready for trial. *Albritton*, 508 F.3d at 1014 (discussing *Hipp's* first stage as "conditionally certifying the collective action"); *Anderson*, 488 F.3d at 952 (stating district court certified collective action, "but only conditionally," noting the possibility of later decertifying once

discovery is substantially over). District courts following the two-step *Hipp* approach should treat the initial decision to certify and the decision to notify potential collective action members as synonymous. Indeed, *Hipp* collapses the two questions by describing the first stage of certification as "the notice stage." *Hipp*, 252 F.3d at 1218. The 11th Circuit's precedent on notice is, for the purpose of a *Hipp* analysis, the same as its law on the question of conditional, and initial, certification.

11.     Although not relevant at this stage of the process of certification, the second stage is triggered by an employer's motion for decertification. *Anderson*, 488 F.3d at 953. At this point, the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity. Id. This second stage is less lenient, and the plaintiff bears a heavier burden. Id. (citing *Thiessen v. GE Capital Corp..*, 267 F.3d 1095, 1103 (10th Cir. 2001)). In *Anderson*, the 11th Circuit again refused to draw bright lines in defining similarly, but explained that as more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated. Id. ("Exactly how much less lenient we need not specify, though logically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action.").  The Court also refused to "specify how plaintiffs' burden of demonstrating that a collective action is warranted differs at

the second stage." *Id*. Rather, the Court emphasized the fact that the "ultimate decision rests largely within the district court's discretion," and clarified that in order to overcome the defendant's evidence, a plaintiff must rely on more than just "allegations and affidavits." *Id*. Because the second stage usually occurs just before the end of discovery, or at its close, the district court likely has a more extensive and detailed factual record. In *Anderson*, the Court quoted approvingly of *Thiessen*, where the Tenth Circuit identified a number of factors that courts should consider at the second stage, such as: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Anderson,* 488 F.3d at 953 (quoting with approval *Thiessen*, 267 F.3d at 1103); see also *Mooney*, 54 F.3d at 1213 n.7, 1215-16. Thus, at the second stage, "although the FLSA does not require potential class members to hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions" and encompass the defenses to some extent. *Anderson*, 488 F.3d at 953 (citation and quotation marks omitted). For example, the district court must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly. Id. at 954 n.8 (noting that all named plaintiffs were unionized but some opt-in plaintiffs were not, making the

collective bargaining agreement defense applicable to some but not all plaintiffs). But ultimately, whether a collective action is appropriate depends largely on the factual question of whether the plaintiff employees are similarly situated to one another.

12.    As stated above, this more rigorous analysis occurs at the close of discovery and is triggered by the Defendant filing a Motion to Decertify.

13.    At this time, three (3) Plaintiffs filed this initial action and one (1) former employee, Matthew Tackett, previously filed and settled an individual FLSA lawsuit alleging identical factual and legal allegations. Of the three plaintiffs, Paul McAnally is a plumber as was Matthew Tackett, the former employee that filed and resolved an identical lawsuit. The other two Plaintiffs, Simmons and Clark, are apprentices but their claims are identical to the plumbers' claims.

14.    The plumbers (including Tackett in the previous case) and apprentices have all alleged that the Defendants required them to report to the Defendants' shop at the beginning of the day so they could obtain parts and supplies, pick up the company truck, were required to drive to the plumbing supply store on occasion to pick up parts and then to drive to the jobsites.

15.    The Plaintiffs and Tackett also allege that at the end of the day, they were required to return the company vehicles to the Defendant's shop unless there were extenuating circumstances and they notified and received permission from the

Defendants to be able to drive the company trucks home. Many of the jobsites of the Defendants were outside of Shelby County and the employees were required to drive to Huntsville, Decatur, Talladega, Tuscaloosa, Montgomery, etc. and were not paid for this time. The employees were also required to travel out of the state for certain jobs but were not paid for their time driving to and from the out of state job locations.

15.    Although the plumbers and apprentices have different job titles, the plumbers and apprentices are similarly situated for the purpose of certifying this matter as a FLSA collective action based on the following: (a) they are all non-exempt employees that are paid an hourly rate;  (b) they have all claimed that they have all worked in excess of forty (40) hours per week and not been paid for their overtime; (c) the Plaintiffs and other employees, whether they were plumbers and/or apprentices, were all told by the Defendants that they were not getting paid for being required to report to the shop, get parts for the day and for their time traveling to and from jobsites to and/or from the Defendant's shop where the trucks and parts were stored.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs are requesting the following:

(A)    Enter an Order certifying this matter as a collective action as to all current and/or former non-exempt plumbers and apprentices of the Defendants;

(B)   Enter an Order requiring the Defendant to authorize notice by first class mail to all similarly situated non-exempt plumber and plumber's apprentices employees, including, but not limited to, current and/or former non-exempt employees that were employed by the Defendants at any time during the three years prior to the filing of this action to inform them of the nature of the action and their right to opt-into this lawsuit; and

(C)   The Plaintiffs further request an Order requiring the Defendants to produce a computer-readable data file containing the names, current and/or last known contact information, addresses, Social Security number, e-mail addresses and telephone numbers of such potential opt-ins so that notice may be verified by the Plaintiffs and the Court.

/s/ Scott Harwell_____
Scott Harwell (HAR198)
Counsel for the Plaintiffs

OF COUNSEL:
HARWELL LAW FIRM LLC
109 Foothills Parkway #112
Chelsea, AL 35043
(205) 999-1099
Scott@HarwellLaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 5th day of February, 2020, I have filed this pleading via the ECF system which will send notice to the Defendants' counsel of record.

<u>/s/ Scott Harwell</u>
Of Counsel