UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PAUL McANALLY, et al.,** | } |
| | } |
| **Plaintiffs,** | } |
| | } |
| v. | }  Case No.:  2:19-cv-02033-RDP |
| | } |
| **ALABAMA PLUMBING** | } |
| **CONTRACTOR, et al,** | } |
| | } |
| **Defendants.** | } |

## MEMORANDUM OPINION AND ORDER

This case is before the court on Plaintiffs' Motion for Summary Judgement. (Doc. # 74). Plaintiffs seek judgment against Alabama Plumbing Contractor, LLC and Brent Vacarella as to liability on their minimum wage and overtime claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). The Motion has been fully briefed. (Docs. # 85, 90).

**I.      Background[1]**

Plaintiffs all worked for Alabama Plumbing Contractor LLC ("APC") as licensed plumbers or as plumber's assistants/apprentices. (Doc. # 69 at 3). Brent Vacarella owns 49% of APC and is responsible for paying APC's employees. (Doc. # 74-1 at 14).[2] APC provides plumbing services at commercial jobsites. (Docs. 66-1 at ¶ 2; # 89-1 at 9-11; # 89-2 at 9-10; # 89-3 at 9-10). "All of the work [plumbers performed] for Alabama Plumbing took place at the job site where the

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the non-moving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] Where the court cites to a deposition, the page reference is to the deposition page number rather than the CM/ECF page number.

plumbing work was being done." (Doc. # 89-1 at 13). APC has a shop located in Shelby County, Alabama, where it keeps company-owned trucks and some parts and supplies. (Docs. # 74-1 at 36, 37, 42; # 76-1 – 76-6; # 79-4 at 13-14).

Plaintiffs have testified that they were instructed by Vacarella to report to APC's shop in the mornings to, among other things, receive job assignments and instructions; gather supplies and parts; and load or hook up heavy equipment and machinery needed that day to perform their job. (Docs. # # 76-1 – 76-6). Plumbing supply vendors also frequently provided coffee and biscuits to APC employees at the shop in the morning. (Doc. # 66-1 at 6).

Vacarella has presented evidence in his sworn declaration that no plumber was required to appear at the shop in the morning. (Doc. # 66-1 at 5-7). Job instructions were communicated to plumbers in person at jobsites for subsequent days' work and by telephone and/or text. (Doc. # 66-1 at 5-7). Approximately half of APC's plumbers and assistants drove their own vehicles directly from their homes to the jobsites and back. (Doc. # 66-1 at 5-7).

Certain employees drove the APC trucks from the APC shop to the jobsites. (*Id.*). Vacarella testified that he provided the trucks as a convenience, and that APC paid for the gas used in driving the trucks. (Doc. # 66-1 at 5-7). If APC's trucks were used for transportation, Vacarella required the trucks to be brought back to the shop because APC had more insurance coverage if the company trucks were kept there. (Doc. # 74-1 at 31). Employees could only take the trucks home if they obtained permission. (Doc. # 74-1 at 44-46).

Some tools were furnished and kept on APC's trucks. (Doc. # 89-4 at 19-21). However, employees also brought their own tools and stored them either on the trucks or at the jobsite. (Doc. # 89-4 at 19-21). The vast majority of supplies were delivered to the jobsite by plumbing supply

companies or a supervisory employee. (Doc. # 66-1 at 2-3). Plumbers could also order supplies for delivery to the jobsites. (Doc. # 89-2 at 16-18).

APC did not pay employees for the time spent driving the APC trucks to the jobsites in the Birmingham, Alabama area. (Docs. # # 76-1 – 76-6; # 74-1 at 42). Vacarella also did not pay employees for putting gas in the trucks while travelling to the jobsites, or for picking up supplies on the way. (Doc. # 74-1 at 39, 78; # 75-1; # 78-1; # 78-2). Vacarella testified that he did pay for travel to jobsites that were out of town, or not in the Birmingham area. (Doc. # 74-1 at 33).

Vacarella further testified that:

- the plumbers' and assistants' "[t]ime does NOT start at the shop. It starts on the job site. I hire commercial plumbers to do commercial plumbing on a commercial job site."

- he "told them that they were not to record their time for when they would report to the shop in the morning" and "that's always been the policy of Alabama Plumbing company."

- plumbers are expected to be on the job site by 7 am and work hours are from 7 am until 3:30 pm.

- "The job sites start at 7:00 and end at 3:30. It has never changed. I have -- I can't change that. That's what my contract reads. The jobs start at 7:00 to 3:30. That's when [the plumbers and assistants] are expected to be there."

(Doc. # 74-1 at 15-16, 35-36). In October 2019, Vacarella sent a text to APC employees stating:

> Guy (sic) wanted to make sure everyone is aware and not confused. Time starts when you get to the job. Not when you get to the shop. I have been told that Greg has told someone and we all think that time starts when you get to the shop. Let me know if you are confused but I have said repeatedly that time starts at the job. Let me know if your (sic) confused on this
>
> Let's all just meet Monday and try and get this strait (sic) one(sic) and for all it HAS NEVER CHANGED but let's all make it work for everyone not trying to cheat anyone with time.

(Doc. # 77-1).

There is record evidence that, on Jason Kirby's first day, he recorded that he had worked nine and one-half hours, but was only paid for nine hours. (Doc. # 76-5). The next day, Kirby

recorded twelve and one-half hours of time, but APC only paid him for twelve hours. (Doc. # 76-5). On most days, Kirby rode his motorcycle from his home to the jobsite. (Doc. # 89-4 at 18-19).

Prior to December 2019, when the first FLSA lawsuit was filed against APC by Matthew Tackett, Vacarella "[did]n't know anything about the Fair Labor Standards Act." (Doc. # 74-1 at 59). Nor had he consulted a lawyer to determine whether his pay practices were in compliance with federal law. (Doc. # 74-1 at 59-60).

Shortly after becoming aware of the *Tackett* lawsuit, Vacarella texted employees the following message: "Hey just wanted to check to make sure you knew you could drive the truck strait to the job site and not have to stop by the office." (Doc. # 79-2). Thereafter, in February 2020, Vacarella sent another text to employees about hours:

> guys we need to make sure everyone understands the working hours. If you drive the truck home there is no need to come to the office and you are required to be at the job site at 7:00 and leave at 3:30. During this time you are allowed a 30 min. lunch, not 45 or [an] hour. If you need material order it and have it delivered to the job or get this during work hours. I'm looking at time sheets and I know y'all understand this but are taking advantage of Alabama plumbing. If you keep the truck at the office YOUR TIME WILL START AND STOP WHEN YOU LEAVE AND GET HERE. After today if I find time sheets incorrect and employees billing for [non-]work hours you will be terminated. Please refer to your employee hand [book] or ask if you have any questions. Please text me separately if [you're] still confused
>
> Brent

(Doc. # 78-5).

Plaintiffs have not identified for the court any Rule 56 evidence showing that any of them were paid less than minimum wage per hour worked. Nor have Plaintiffs identified any Rule 56 evidence that any of them were paid less than one and one half times their regular hourly rate for any hours over forty worked in any workweek. (Docs. # 85, 91).

4

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(c). The moving party must show the court that there is a basis for granting summary judgment, as well as point to the evidence contained in the pleadings that demonstrates an absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When the movant has met its burden, Rule 56 requires the non-moving party to highlight specific facts beyond the pleadings (such as affidavits, depositions, interrogatory answers, or admissions on file) that show a genuine issue for trial. *See Id.* at 324.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (citing U*.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir.1991) (*en banc*). If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

In making a determination as to which facts are material, a court is guided by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any reasonable doubts about the facts, or any justifiable inferences derived therefrom, are resolved in favor of the non-moving

party. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007). A dispute exists when "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson*, 477 U.S. at 248.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Thus, a court's inquiry in a Rule 56 motion is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.    Applicable Legal Standards

The FLSA requires covered employers to pay non-exempt employees the minimum wage, 29 U.S.C. § 206(a), and overtime pay for hours worked in excess of forty per workweek, *id*. § 207(a)(1). Plaintiffs have not argued that Defendants failed to pay them the minimum wage. (Doc. # 85).

Under § 207 of the FLSA, "an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)). "A person is employed if he or she is suffered or permitted to work." *Id*. (citing 29 U.S.C. § 203(g)). "It is not relevant that the employer did not ask the employee to do the work. The reason that the employee performed the work is also not

relevant. If the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Id*. (internal quotation marks and citation omitted).

In this case, Plaintiffs, who obviously have the burden of proof on their claims, have moved for summary judgment. To prevail on their Motion, Plaintiffs must also show that there is no dispute of fact about whether the work for which they claim that they are due overtime compensation is compensable under the FLSA. *See Bonilla v. Baker Concrete Const., Inc*., 487 F.3d 1340, 1344 (11th Cir.2007); *Brantley v. Ferrell Elec., Inc*., 112 F. Supp. 3d 1348, 1369 (S.D. Ga. 2015); *Knight v. Allstar Bldg. Materials, Inc*., 2009 WL 3837870, at *5 (M.D. Fla. Nov. 17, 2009).

The Portal–to–Portal Act, 29 U.S.C. § 254(a), exempts certain activities from compensation under the FLSA. An employer is not required to pay an employee for:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a). That is, Plaintiffs must establish that there is no dispute of fact that the time spent engaged in each of the activities for which they seek compensation were not merely preliminary and postliminary activities, but rather were "principal activities," which are those tasks

that are "integral and indispensable" to their duties as plumbers. *See Steiner v. Mitchell*, 350 U.S. 247, 252–53, (1956); *Bonilla*, 487 F.3d at 1344.

The Supreme Court addressed the meaning of "integral and indispensable" in *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 37 (2014). An activity is only "integral and indispensable" to the performance of an employee's principal activities if "it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id*. In other words, "an activity is 'indispensable' to another, principal activity only when an employee could not dispense with it without impairing his ability to perform the principal activity safely and effectively." *Id*. at 520 (Sotomayor & Kagan, JJ., concurring). Whether a particular activity is "integral and indispensable" under the FLSA is a question of law. *Anderson v. Perdue Farms, Inc.*, 604 F.Supp.2d 1339, 1349 (M.D. Ala. 2009) (*citing Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir.1992)). The nature of the employees' duties, however, is a question of fact. *Birdwell*, 970 F.2d at 808 ("Certain sets of facts, if found by a fact finder, will give rise to liability under the FLSA while other sets of facts will not. It is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist.")

**IV.    Analysis**

Plaintiffs contend that they were "all required" to report to APC's shop at the beginning of the day and that they were denied appropriate overtime compensation because they were not paid for their travel time from the shop to commercial jobsites. (Doc. # 85 at 20). Plaintiffs assert that their evidence on this point is undisputed. Vacarella has presented counter-evidence on this point, but Plaintiffs dismiss his declaration testimony as "self-serving." (Doc. # 91 at 7). Regardless of whether the testimony is self-serving (after all, most evidence presented by a party is), it is nonetheless competent Rule 56 evidence, and it is sufficient to create a genuine issue of material

8

fact that must be resolved by a jury. Credibility determinations are not for the court to make. *See Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016) (it is "impermissible" for a district court to make "weight and credibility" determinations).

Furthermore (and in any event), whether the Plaintiffs were "required" to come to the shop in the morning is not dispositive. The Supreme Court's decision in *Integrity Staffing Solutions* "confirms that merely because an employer 'required' an employment activity is insufficient" to render it compensable. *Shearer v. Edger Assocs. Inc.*, 2015 WL 9274928, at *4 (M.D. Fla. Dec. 18, 2015). The contention that Plaintiffs were required to come to the shop is disputed because there is evidence that approximately half of the plumbers and assistants did not do so. The question before the court is whether undisputed facts establish that Plaintiffs' time spent at the shop and traveling to the commercial jobsites was compensable. The Rule 56 evidence is not undisputed on this question.

"The plain language of § 254(a)(1) indicates that commute time is generally not compensable." *Llorca v. Sheriff, Collier Cnty., Fla.*, 893 F.3d 1319, 1326 (11th Cir. 2018). To be compensable, the activities at issue must be activities that are an "'integral and indispensable part of the principal activities'" that the employee is employed to perform. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005). And, the determination of whether an activity is "integral and indispensable" is "fact-intensive" and is generally "not amenable to bright-line rules." *Llorca*, 893 F.3d at 1324.

In *Burton v. Hillsborough County*, 181 Fed. Appx. 829, 833-37 (11th Cir. 2006), the Eleventh Circuit held that the plaintiffs' time spent driving county-owned vehicles from a county-owned parking site to their first work-site of the day was compensable. Significantly, however, in *Burton* the parties did not dispute that the defendant-employer had a policy that required its

9

employees to return to the office site prior to returning home. *Id.* Here, there is a factual dispute about whether Plaintiffs were required to meet at and return to the shop. There is Rule 56 evidence that approximately half of the company's plumbers and assistants did not do so but rather traveled directly from their homes to the jobsites. The fact that half of the similarly situated employees did not meet at and return to the shop indicates that doing so was not an "'integral and indispensable part of the principal activities'" that the plumbers and assistants were employed to perform.

Plaintiffs would only be entitled to summary judgment here if the undisputed evidence establishes that their travel was "integral and indispensable" to the jobs they were hired to perform. Here, the facts are sufficiently disputed and the court cannot make that determination as a matter of law. Genuine issues of fact exist regarding whether meeting at and returning to the shop was "integral and indispensable" to Plaintiffs' principal work activity such that the court cannot conclude, as a matter of law, that the disputed time is compensable. *See Centeno v. I & C Earthmovers Corp.*, 970 F. Supp. 2d 1280, 1290 (S.D. Fla. 2013) (conflicting deposition and affidavit testimony rendered the issue of the compensability of travel time "an issue for the jury to decide"). A jury must resolve those factual issues.

**V.     Conclusion**

For the reasons explained above, Plaintiffs' Motion for Summary Judgement (Doc. # 74) is **DENIED**.

**DONE** and **ORDERED** this April 22, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE